IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**TAYLOR VINEYARD,**

       Plaintiff,

    v.

**OFFICER MICHAEL SOTO; OFFICER
DAVID BAKER; OFFICER C. WHITTEN;
SERGEANT ROBERT MCCLEARY; CHARRIE
STROUD-KAFOUROS; JOHN and JANE DOES;
Portland State University Campus Public Safety
Employees; PORTLAND STATE UNIVERSITY;
and ANDREW FARRIS, a.k.a. ANDREW BRIDGE,**

       Defendants.

Case No. 10-CV-1481-SI
OPINION AND ORDER

Michelle R. Burrows
Sara K. Staggs
618 NW Glisan Street, Suite 203
Portland, Oregon 97209
      Attorneys for plaintiff

Bruce H. Cahn
Jacob Z. Zahniser
Ball Janik, LLP
101 S.W. Main Street, Suite 1100
Portland, Oregon 97204
      Attorneys for defendant Andrew Farris

SIMON, District Judge:

///

OPINION AND ORDER, Page 1

## I. INTRODUCTION

This action arises from the arrest and detention of plaintiff Taylor Vineyard by Portland State University ("PSU") campus security officers on December 3, 2008. Vineyard alleges that defendant Andrew Farris falsely reported to the security officers that Vineyard and another man were engaged in sexual activity in a public restroom on the PSU campus. Vineyard asserts three claims under 42 U.S.C. § 1983 against Farris for malicious prosecution, violation of a right to privacy, and substantive due process ("§ 1983 claims"), and two common law claims for malicious prosecution and intentional infliction of emotional distress ("IIED"). Farris moves to dismiss the action under Federal Rules of Civil Procedure 12(b)(5) (dismissal for insufficient service of process) and 12(b)(6) (failure to state a claim). Farris also makes a special motion to strike under Oregon's Anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, Or. Rev. Stat. §§ 31.150, *et seq.* For the reasons that follow, Farris' motions are GRANTED in part and DENIED in part. Farris's motion pursuant to Rule 12(b)(5) is GRANTED, and Vineyard's service of process against Farris is quashed; Vineyard is ordered by January 17, 2012, either to perfect service on Farris or to file Farris's acceptance of service. Farris's motions pursuant to Rule 12(b)(6) and Or. Rev. Stat. §§ 31.150(2)(c) are DENIED.

## II. ALLEGATIONS OF THE COMPLAINT

Vineyard alleges that he and another man were stopped by PSU campus security officer David Baker and ordered to sit between two cars. Baker read the two men their *Miranda* rights. Compl. ¶ 20. When the other man asked the officers why he and Vineyard had been detained, Baker told them that someone had seen them masturbating in a restroom. *Id.* at ¶ 21. Baker ordered the men to remain between the cars and went away to speak with Farris. *Id.* at ¶ 22.

OPINION AND ORDER, Page 2

When Baker returned, he told Vineyard and the other man that they were both under arrest. Baker refused their request to speak to the complaining witness, telling the two men they were going to jail. *Id.* at ¶ 23. The two men were taken to the campus security office, where they were chained to a bench. *Id.* Baker then asked the two men to tell him what they had been doing in the bathroom, stating that it was "up to me whether you go to prison or not," and that "[i]f you tell me what I want to hear, I'll let you go." *Id.* at ¶ 24.

Vineyard alleges that while they were chained to the bench, campus safety officers came into the room, taunting them and pressuring them to say they had committed sexual acts in the restroom. *Id.* at ¶ 25. Baker told Vineyard and the other man that the witness against them was "believable." When Baker was asked the name of the witness, Baker "changed the subject." *Id.* Baker added that the witness gave "so much detail that he couldn't be lying," saying that he, Baker, "knew they had been involved in a multi-person orgy in the bathroom." *Id.* Baker also told Vineyard and the other man, "If you say you did it, you can go home. I can ask for leniency from the school." *Id.* Eventually the other man was released, but Vineyard remained chained to the bench. *Id.* Vineyard consistently refused to admit the allegation against him, and Baker told him he was going to jail. Baker took Vineyard to the Multnomah County jail, where he remained for the next seven and a half hours, before being released at about midnight. *Id.* at ¶¶ 28, 29. Vineyard was charged with criminal trespass and public indecency, and banned from the PSU campus for two years. *Id.* at ¶ 30. The Dean of Students, however, conducted her own investigation, cleared Vineyard of all wrongdoing, and ordered that the ban be lifted.

The complaint alleges that Farris had a "history of bringing false claims of public indecency against gay men," and that at the time of his accusation against Vineyard, Farris was

"involved in several other cases involving an accusation of men engaging in gay sex with Farris as the only witness." *Id.* at ¶ 31. Attached to the complaint is the case of *Johnson v. Civil Service Board of the City of Portland et al.*, 161 Or. App. 489, 985 P.2d 854 (1999), in which Farris reported to the police in 1994 that he had observed a City of Portland employee engaging in sexual conduct with two other men in a park.

The complaint alleges that in a statement to the Dean of Students, Farris recanted his earlier statement to the security officers that he had seen Vineyard and the other man having oral sex. *Id.* Farris later claimed that he never saw Vineyard in the bathroom, and that he would not recognize Vineyard if he saw him. *Id.* All the criminal charges against Vineyard were dropped on March 26, 2009, after Farris refused to testify. *Id.* at ¶ 30.

### III. STANDARDS

#### A.    Improper service

Under Rule 12(b)(5), when service of process is insufficient, the court has discretion either to dismiss the action without prejudice or to quash service.  *S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006).

#### B.    Failure to state a claim

A motion to dismiss under Rule 12(b)(6) for failure to state a claim should be granted if the plaintiff is unable to delineate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 570 (2007). In deciding a motion under Rule 12(b)(6), the court applies two working principles: first, the court accepts as true all factual allegations in the complaint. Second, the factual allegations must be sufficient to raise a right to relief above the speculative level. *Ashcroft v. Iqbal*, 556 U.S.662, 129 S.Ct. 1937, 1949-50

(2009); *see also Broam v. Brogan,* 320 F.3d 1023, 1028 (9ᵗʰ Cir. 2003) (court accepts as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them).

### C.    Special motion to strike

Under Oregon's Anti-SLAPP statutes, a defendant may make a special motion to strike a claim in a civil action that arises out of an "oral statement" made "in a place open to the public or a public forum in connection with an issue of public interest." Or. Rev. Stat. § 31.150(2)(c). Defendants in federal court may avail themselves of applicable Anti-SLAPP provisions. *Higher Balance, LLC v. Quantum Future Group, Inc.*, 2008 WL 5281487 *2 (D. Or. Dec. 18, 2008). A special motion to strike is treated as a motion to dismiss under Or. R. Civ. P. 21A[1] and requires the court to enter a judgment of dismissal without prejudice if the motion is granted. *Gardner v. Martino,* 563 F.3d 981, 986 (9ᵗʰ Cir. 2009).

Farris has the initial burden of showing that the claims to which the motion is directed arise out of a challenged statement made in a place open to the public or a public forum, in connection with an issue of public interest. Or. Rev. Stat. § 31.150(2)(c); *Higher Balance* at *3. In making its decision on the motion, the trial court examines not only the pleadings but also any supporting and opposing affidavits. *Staten v. Steel,* 222 Or. App. 17, 29, 191 P.3d 778, 787 (2008), *citing* Or. Rev. Stat. § 31.150(4). The showing required of Farris can, however, be made on the basis of the pleadings alone. *Staten,* 222 Or. App. at 31, 191 P.3d at 788.  If Farris meets

---

[1] Application of the statute's special motion to strike to dismiss a claim without prejudice does not create a direct conflict between the Oregon Rules of Civil Procedure and the Federal Rules of Civil Procedure. *Gardner,* 563 F.3d at 991, *citing United States v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9ᵗʰ Cir. 1999).

his burden, the burden shifts to Vineyard to establish a probability that he will prevail on the claim, by presenting substantial evidence to support a prima facie case. *Gardner,* 563 F.3d at 986. Vineyard's burden is potentially heavier than merely establishing the existence of a disputed issue of fact.  *Staten,* 222 Or. App. at 31, 191 P.3d at 788. If Vineyard fails to meet his burden, the court must grant the motion.  *Higher Balance* at *3; Or. Rev. Stat.  § 31.150(3).  In addition, the purpose of the special motion to strike "is to provide for the dismissal of claims against persons participating in public issues, *when those claims would be privileged* under case law, before the defendant is subject to substantial expenses in defending again them." *Staten,* 222 Or. App. at 29, 191 P.3d at 787 (emphasis added).

## IV. DISCUSSION

### A.      Motion to dismiss for insufficient service

#### 1.      Timeliness of motion

Vineyard asserts that Farris's motion based on improper service of process is untimely because it was not made before Farris filed his answer. Under Rule 12(b)(5), the defense of insufficient service of process must be asserted either by answer or by motion. If asserted by motion, the motion "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Farris filed this motion after asserting a defense of improper service in the answer. "Courts are split as to whether a Rule 12(b)(5) motion, which is commonly referred to as a "pre-answer" motion, is the proper procedural vehicle for attacking service of process *after* an answer has been filed."  *Moreno-Garcia v. Yakima Police Dep't,* 2010 WL 4386481 *1 (E.D. Wash. Oct. 27, 2010), *citing Augustine v. United States,* 704 F.2d 1074, 1075 n. 3 (9th Cir. 1983) (motion under Rule 12(b)(1) made after responsive pleading was "technically untimely"). In

*Moreno-Garcia,* the district court held that

> [n]ot withstanding the "before pleading" language of Rule 12(b), the lack of other pretrial procedures for raising an improper service defense suggests that post-answer Rule 12(b) motions should be permitted. Rule 12(b) requires courts to hear and decide Rule 12(b)(1)-(7) defenses before trial, whether made in pleading or by motion. [citation omitted] But because the instant motion does not raise a so-called "nonwaivable" defense, it is not properly before the Court as a Rule 12(h)(2) or 12(h)(3) . . . (allowing parties to raise defenses of subject matter jurisdiction, failure to state a claim, or failure to join an indispensable party at any time). And because the motion does not go to the merits of the action, it is not properly brought by a motion for summary judgment. [Citation omitted]. Left with no alternative procedural approach, the Court considers the instant motion under Rule 12(b)(5).

*Id.* at *2. The court finds it unnecessary to resolve the question of whether Farris's motion is untimely because the motion was filed after the answer, which did raise the defense of improper service of process. Farris was unrepresented by counsel when he filed the answer, rather than present by motion his argument that service was improper. A *pro se* plaintiff is treated with "great leniency" when the court evaluates his compliance with "technical rules of civil procedure." *Draper v. Coombs,* 792 F.2d 915, 924 (9th Cir. 1986). Accordingly, the court declines to rule that the motion under Rule 12(b)(5) is untimely.

## 2.    Insufficient service of process

Vineyard attempted personal service at Farris's residence in Detroit, served him by unrestricted first class mail, then had a process server tape the Summons and Complaint to the door of Farris's residence. Affidavit of S. Miller ¶¶ 2, 3, 5, 6.

Under Rule 4(e)(1) of the Federal Rules of Civil Procedure, service may be made "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made ..." Rule 7 D(1) of the Oregon Rules of Civil Procedure provides that summons must be served in any manner

reasonably calculated under all the circumstances to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend. Vineyard concedes that service upon Farris was not made by one of the presumptively adequate methods listed in Rule 7 D(2), but asserts that the manner of service satisfied the threshold requirement of Rule 7 D(1). *See Baker v. Foy,* 310 Or. 221, 228-29, 797 P.2d 349 (1990). In *Baker,* the court held that when service is not made by one of the presumptively adequate methods, the inquiry "focuses on whether plaintiff's conduct was objectively and reasonably calculated under the totality of the circumstances existing at the time of attempted service to apprise defendants of the pendency of the action." If that inquiry is answered in the affirmative, service is deemed valid. *Davis Wright Tremaine, LLP v. Menken,* 181 Or. App. 332, 337, 45 P.3d 983, 985 (Or. App. 2002). The inquiry focuses, not on the defendant's subjective notice, but on whether the plaintiff's conduct was objectively, reasonably calculated, under the totality of the circumstances then known to the plaintiff, to apprise the defendant of the pendency of the action. *Id.* at 181 Or. App. 339, 45 P.3d at 987.  Thus, actual notice "is, essentially, irrelevant." *Id. See also  Jordan v. Wiser,* 302 Or. 50, 60, 726 P.2d 365 (1986) (actual notice does not make service adequate under Rule 7).

As a general rule, service by mail on an individual must be by restricted delivery– only the person being served can either accept or refuse the mailing– to satisfy the reasonable notice standard of Rule 7 D(1). *Davis Wright,* 181 Or. App. at 988. Thus, a summons and complaint sent by first class mail is not sufficient to satisfy Rule 7 D(1). In *Murphy v. Price,* 131 Or. App. 693, 697, 886 P.2d 1047 (1994), *rev. den.,* 321 Or. 137, 894 P.2d 468 (1995), the court held that service by sending a copy of the summons and complaint to defendant at his mailing address

using certified mail, return receipt requested, but with unrestricted delivery was inadequate

because

> anyone at that address–a roommate, a neighbor, defendant's landlord–could have
> signed for the receipt of the summons and complaint, with no assurances that
> defendant would ever see the papers. In other words, plaintiff did not know who
> would actually receive the summons and complaint once they were delivered to
> the location that defendant listed as his address.

*See also Davis Wright,* 181 Or. App. at 343 ("mere service by certified mail, without some more

particularized assurance or confirmation of delivery to the defendant, e.g., restricted delivery,

return receipt requested, etc., [is not] sufficient to satisfy ORCP 7 D(1)"); *Edwards v. Edwards,*

310 Or. 672, 679-80, 801 P.2d 782 (1990) ("No Oregon case upholds service by mail as

adequate unless it is acknowledged by defendant").

Affidavits stating that unsuccessful attempts at personal service were made on the

defendant also do not suffice, absent "evidence in the record that defendant was aware of those

efforts or that plaintiff reasonably believed that defendant was aware of those efforts." *Davis*

*Wright*, 181 Or. App. at 340, 45 P.3d at 987. The court has reviewed the affidavit of Michigan

process server Miller (doc. # 22-1), stating that on two consecutive days, March 1, 2011 and

March 2, 2011, he attempted service by knocking at the door and, a few days later, observed a

sign posted on the front door reading, "If you do not have an appointment, you will not be

received. The door will not be answered, and you will be subject to Immediate Removal by

Armed Escorts. No Solicitors, Peddlers, Pan Handlers, or Handbills wanted or accepted." Miller

Aff. at ¶ ¶ 2, 3, 5. Miller's affidavit contains no indication that Miller attempted to make an

appointment, but states that on March 9, 2011, he attempted service by taping the service papers

on the front door security gate of Farris's residence. *Id.* at ¶ 6.

OPINION AND ORDER, Page 9

Miller's affidavit does not establish that Farris was aware of efforts being made to serve him, or that Vineyard had a reasonable belief that Farris was aware of those efforts. In *Davis Wright*,  plaintiff had twice unsuccessfully attempted to effect personal service, but had not submitted evidence that defendant was aware of those efforts or that plaintiff reasonably believed defendant was aware of them. Plaintiff had simultaneously sent both a certified mailing, unrestricted delivery (which was refused), and a first class mailing to defendant's post office box, but the envelopes bore no indication that would alert the recipient to their contents. The court held that service did not comport with the reasonable notice requirement of Rule 7 D(1).

Under *Davis Wright,* the unsuccessful attempts of the process server and the sending of the summons and complaint by first class mail are insufficient to satisfy the requirement of Rule 7 D(1). This result would not change under either the Michigan Rules of Civil Procedure or Rule 4 of the Federal Rules of Civil Procedure. Accordingly, the court concludes that Vineyard failed to effect proper service on Farris, and exercises its discretion to quash service rather than dismiss this action without prejudice.

### B.    Motion to dismiss § 1983 claims for failure to state a claim

Farris challenges Vineyard's § 1983 claims on the ground that Vineyard has failed to allege that Farris's actions were taken under color of state law. To state a claim under § 1983, Vineyard "must allege a violation of his constitutional rights and show that the defendant's actions were taken under color of state law." *Florer v. Congregation Pidyon Shevuyim, N.A.,* 639 F.3d 916, 921 (9th Cir. 2011). The "traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state

law." *West v. Atkins,* 487 U.S. 42, 49 (1988) (internal quotations and citation omitted). To

determine whether actions that allegedly caused the deprivation of a right are fairly attributable

to the state even though committed by a private actor, the court engages in two inquiries: first,

whether the deprivation was caused by the exercise of some right or privilege created by the

state, or by a rule of conduct imposed by the state, or by a person for whom the state is

responsible; and second, whether the party charged with the deprivation is a person who may

fairly be said to be a state actor. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Florer,*

639 F.3d at 922. Vineyard bears the burden of establishing that Farris was a state actor. *Id.*

  Farris argues that Vineyard's complaint fails to allege facts establishing that Farris was

acting under color of state law when he reported public sexual activity to PSU campus security.

Vineyard counters that the allegations of the complaint establish the elements of the

"joint action" test for acting under color of state law. *See Lugar,* 457 U.S. at 943.

  The "joint action" test is satisfied when private actors are "willful participant[s] in joint

action with the [government] or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27 (1980); *see also*

*Collins v. Womancare,* 878 F.2d 1145, 1154 (9th Cir. 1989) (same).  The "lynchpin of a finding

of joint action is the existence of a substantial degree of cooperative action." *Collins,* 878 F.2d at

1154 (internal citation and quotations omitted). The joint action test is therefore satisfied when

"the actions of the state and the private party are intertwined or when the parties have a

symbiotic relationship." *Villegas v. Gilroy Garlic Festival Ass'n,* 541 F.3d 950, 960 (9th Cir.

2008).

  Vineyard has alleged that Farris falsely accused him of engaging in sexual activity with

another man in a public restroom, and that Farris had brought such accusations against others in

the past. Further, Vineyard alleges that after detaining Vineyard, Baker went away to speak further with Farris, then returned to arrest Vineyard. Vineyard has alleged that Baker vouched for Farris's credibility, saying the witness had given Baker "so much detail that he couldn't be lying." Despite having initially told Vineyard a witness had seen him masturbating in a public restroom, after Baker had conferred with Farris again, he accused them of being "involved in a multi-person orgy in the bathroom." Taking Vineyard's allegations as true, and drawing all reasonable inferences in Vineyard's favor, the court concludes that Vineyard has pleaded facts sufficient to satisfy the "joint action" test. It can be reasonably inferred from the complaint that Baker did more than receive a citizen's complaint from Farris: he vouched for Farris's credibility to Vineyard and, upon Vineyard's denial, conferred further with Farris, returned with the charge of an "orgy," and told Vineyard that unless he confessed to the charge made by Farris, Vineyard would go to jail. These allegations are sufficient to state a claim of Farris's active participation and cooperation in the malicious prosecution claim brought against the state actors. The motion to dismiss the § 1983 claims under Rule 12(b)(6) is denied.

### C.    Motion to dismiss state law claims

#### 1.    Qualified privilege

Farris asserts that under Oregon law, citizens enjoy a qualified privilege when making informal reports to the police, citing *DeLong v. Yu Enterprises, Inc.*, 334 Or. 166, 47 P.3d 8 (2002). A "qualified privilege" requires the plaintiff to prove that the defendant abused the "privileged occasion." *Id.,* 334 Or. at 170, 47 P.3d at 10. Generally, a qualified privilege exists to protect three kinds of statements: (1) those made to protect the defendant's interests; (2) those made to protect the plaintiff's employer's interests; or (3) those made on a subject of mutual

concern to the defendant and the persons to whom the statement was made. *Id., citing Wallulis v. Dymowski*, 323 Or. 337, 350, 918 P.2d 755 (1996).

Farris asserts that qualified privilege protects him from claims of both defamation and IIED. As Vineyard points out, he has not asserted a defamation claim against Farris; the claim against Farris is one for malicious prosecution. Further, a qualified privilege does not generally preclude a claim for malicious prosecution or IIED at the pleading stage. If pled correctly, both torts include elements of intentional or reckless wrongdoing that would negate a defense of qualified privilege.

Under *DeLong,* a citizen making an informal statement to the police receives protection only if the statements were made in good faith, a limitation that is intended "to discourage an abuse of the privilege." 334 Or. at 173, 47 P.3d at 12. The court explained,

> [W]hen such communications are made in good faith and confidence, and with an honest view and purpose, to the object and end intimated, and is [*sic*] not made as a pretext to cover over secret malevolence or ill will towards the party spoken of, it is proper that they should be made, and the honest portion of the community should be encouraged rather than restrained from making them, by the terror of legal responsibility.

*Id.*, 334 Or. at 174, 47 P.3d at 12 (internal citation and quotations omitted). Vineyard has pleaded facts from which it can reasonably be inferred that Farris's complaint to campus security was not truthful and was motivated by an intent to harm Vineyard. Because an element of the tort of malicious prosecution is the existence of malice or some other form of bad faith, Vineyard's claim for malicious prosecution is not protected by a qualified privilege, at least at the pleading stage.

Farris cites *Franson v. Radich,* 84 Or. App. 715, 735 P.2d 632 (1987), in support of his argument that the existence of a privilege forecloses Vineyard's IIED claim. *Franson* is

OPINION AND ORDER, Page 13

distinguishable, however, because the decision in that case was based on the absolute privilege given to statements made in connection with a judicial proceeding. *Id.* at 84 Or. App. 718, 735 P.2d at 634. *Franson* does not support the argument that a qualified privilege generally exists against an IIED claim; the intent element of the tort itself indicates the opposite. *See, e.g., Checkley v. Boyd,* 170 Or. App. 721, 732, 14 P.3d 81, 89 (2000) *and Spiess v. Johnson,* 89 Or. App. 289, 294, 748 P.2d 1020, *aff'd by equally divided court* 307 Or. 242, 765 P.2d 811 (1988) (gravamen of the tort of IIED is "a loss due to *intentionally* inflicted severe emotional distress") (emphasis in original).

### 2.    Failure to state a claim

To plead a claim for malicious prosecution, a plaintiff must allege: (1) the commencement and prosecution by a defendant of a judicial proceeding against the plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) the absence of probable cause to prosecute the action; (4) the existence of malice or, as is sometimes stated, the existence of a primary purpose other than that of securing an adjudication of the claim; and (5) damages. *Mantia v. Hanson,* 190 Or. App. 412, 419-20, 79 P.3d 404, 409 (2003); *Alvarez v. Retail Credit Ass'n,* 234 Or. 255, 259-60, 381 P.2d 499 (1963) (describing elements of wrongful initiation of civil proceedings, the "civil counterpart" to a malicious prosecution action, *see Erlandson v. Pullen,* 45 Or. App. 467, 471, 608 P.2d 1169, 1172 (1980)).

Farris challenges Vineyard's malicious prosecution claim on the grounds that: (1) Farris, as a private actor, did not instigate criminal proceedings against Vineyard; and (2) no criminal proceedings were ever instigated against Vineyard. Farris's arguments are not persuasive.

To plead the commencement and prosecution element of the tort, Vineyard need not

allege that Farris personally instigated the proceedings; he need only allege that Farris "took an active part in the initiation, continuation or procurement of proceedings." *Rogers v. Hill,* 281 Or. 491, 499-500, 576 P.2d 328 (1978); *see also Restatement (Second) of Torts* § 655 (1977) (active participant in unfounded criminal proceeding may be liable for malicious prosecution). The commencement and prosecution element in a malicious prosecution action "pertains to the person who is a primary catalyst for the proceeding and it is not limited to the party that formally initiates it." *Checkley,* 170 Or. App. at 737, 14 P.3d at 91. Vineyard has alleged facts sufficient to plead the commencement and prosecution element of malicious prosecution.

With respect to the element of termination in plaintiff's favor, the complaint alleges that Vineyard was charged with criminal trespassing and public indecency and that the criminal charges were dropped four months later, on March 26, 2009, after Farris refused to testify. This is sufficient to allege that the criminal proceedings against Vineyard terminated in his favor.

Farris also challenges Vineyard's claim for IIED for failure to state a claim. To plead a claim of IIED, a plaintiff must allege facts sufficient to demonstrate that the defendant: (1) intentionally caused, i.e., intended to cause or knew with substantial certainty that his conduct would cause, severe emotional distress; (2) engaged in outrageous conduct, i.e., conduct that was an extraordinary transgression of the bounds of socially tolerable behavior; and (3) caused the plaintiff severe emotional distress. *Checkley,* 170 Or. App. at 735, 14 P.3d at 90-91.

Farris argues that "under Oregon law, absent some special relationship or ulterior motive," the allegation that Farris accused Vineyard of committing a crime Vineyard claims he did not commit is insufficient to state an IIED claim because it does not support an inference of intent to inflict severe emotional distress and does not transgress the bounds of socially tolerable

conduct. An IIED claim, however, does not require the existence of a special relationship or an ulterior motive. Although Farris cites *House v. Hicks,* 218 Or. App. 348, 179 P.3d 730 (2008), in support of his argument, the case stands only for the holding that, in evaluating outrageousness of conduct, the court should consider, among other contextual circumstances, the existence of a special relationship "that shapes the interpersonal dynamics of the parties" and "imposes on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's-length encounters among strangers." 218 Or. App. at 360, 179 P.3d at 737. The *House* case does not support the argument that, to allege an IIED claim, Vineyard was required to allege a special relationship, and other authority is to the contrary. *See, e.g., Staten,* 222 Or. App. at 41, 191 P.3d at 793; *Checkley,* 170 Or. App. at 735, 14 P.3d at 90-91, and *Kraemer v. Harding,* 159 Or. App. 90, 976 P.2d 1160 (1999) (existence of special relationship not an element of the tort of IIED, and not necessary to impose liability). The motion to dismiss the common law claims for malicious prosecution and IIED are denied.

###### C.     Special motion to strike

In support of his special motion to strike, Farris argues that Vineyard's claims arise out of oral statements made by Farris in a place open to the public in connection with an issue of public importance and that Vineyard cannot establish with substantial evidence a probability that he will prevail on his claims.

Farris has the initial burden of showing that his statements about Vineyard were made in a public forum or a public place and in connection with an issue of public importance or public interest. Farris has produced no evidence on this issue except for the PSU Public Safety Report attached to Farris's answer (doc. # 19). The Report indicates that Farris made a telephone call to

the campus security office, a place open to the public, to report the alleged activity in the bathroom. The answer itself does not contain allegations that Farris's accusation was made in a public place. The question of whether Farris's communication with the campus security office was *made in* a public place, as opposed to *made to* a public safety officer cannot be ascertained on this record.

Regardless of whether Farris has met his initial burden, however, the court concludes that Vineyard has, through his declaration (doc. # 17), proffered substantial evidence in support of his prima facie case of malicious prosecution and IIED. The special motion to strike is denied.

## V. CONCLUSION

Farris's motion to dismiss (doc. # 32) is GRANTED in part and DENIED in part. Because Vineyard failed to effect proper service of process on Farris, service is quashed. Vineyard is ordered by January 17, 2012, either to perfect service on Farris or to file Farris's acceptance of service. Farris's motion under Rule 12(b)(6) to dismiss the § 1983 claims and the common law tort claims is DENIED. Farris's special motion to strike under Or. Rev. Stat. § 31.150(2)(c) is also DENIED.

IT IS SO ORDERED.

Dated this 7th day of November, 2011.


_____/s/  Michael H. Simon_____
        Michael H. Simon
        United States District Judge


OPINION AND ORDER, Page 17