IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

GREG BECKER,

     Plaintiff,

     v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

     Defendant.

Case No. CV 10-01469-SI

OPINION AND ORDER

Phyllis Burke
3800 NE Sandy Blvd., Suite 226
Portland, Oregon 97232
     Attorney for plaintiff

Amanda Marshall
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Gerald J. Hill
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104
     Attorneys for defendant

SIMON, District Judge.

Opinion and Order, Page 1

Plaintiff Greg Becker ("Becker") seeks judicial review of the Social Security Commissioner's final decision denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. § § 401-33, and Supplemental Security Income ("SSI") payments under Title XVI of the Act. 42 U.S.C. §§ 1381-83f. I have jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision is reversed and remanded for further proceedings. Specifically, for the reasons stated below, on remand the ALJ shall make proper findings at step four in the sequential disability analysis regarding Mr. Becker's past relevant work.

## I. INTRODUCTION

Born in 1976 (Tr. 113),[1] Mr. Becker completed one year of college (Tr. 142) and performed past work as an associate accountant, convenience store cashier, call center worker, and punch press operator. Tr. 137. He filed applications for DIB and SSI on June 22, 2007 (Tr. 113, 117), alleging disability since April 1, 2005 (Tr. 15), due to diabetes, depression, high blood pressure, gout, and cellulitis. Tr. 136. The Commissioner denied these applications initially and upon reconsideration. Tr. 70-93. An ALJ held a hearing on April 22, 2010 (Tr. 27-68), subsequently finding Mr. Becker not disabled on May 19, 2010. Tr. 37-43. The Appeals Council accepted additional evidence into the record, but denied review of the ALJ's decision. Tr. 1-5. This action made the ALJ's decision the final decision of the Commissioner, 20 C.F.R. § 410.670a; Mr. Becker now appeals.

## II. BACKGROUND

The record before this court shows that Mr. Becker received care for type II diabetes

---

[1] Citations "Tr." refer to refer to the indicated pages in the official transcript of the administrative record filed by the Commissioner on May 3, 2011 [5].

mellulitis between April and December 2005.  Tr. 215-300.  He visited the Emergency Room on several occasions in June and July 2006 for treatment of right-leg cellulitis, food poisoning, and hyperglycemia.  Tr. 325-45.  Mr. Becker was hospitalized between January 3, 2007, and January 5, 2007, for treatment of right leg cellulitis.  Tr. 360-67.  Anneliis Juuma, M.D., treated Mr. Becker's type II diabetes between April 2007 and August 2007.  Tr. 427-32.

On September 6, 2007, psychologist Paul Stoltzfus, Psy. D, examined Mr. Becker conjunction with Mr. Becker's application for benefits.  Tr. 456-59.  Dr. Stoltzfus reported that Mr. Becker met the criteria for an adjustment disorder diagnosis, but assessed no psychological work-related limitations.  Tr. 459.  General physician Timothy Fernstrom, D.O., performed a physical examination in conjunction with Mr. Becker's application on September 15, 2007, and assessed diabetes, cellulitis, elevated liver enzymes, gastroesophageal reflux disease, gout, depression, hypertension, hyperlipidemia, and morbid obesity.  Tr. 461-66.

Eric North, M.D., followed Mr. Becker's diabetes and related complications between April 9, 2008, and December 30, 2008.  Mr. Becker was hospitalized again between September 8 and 11, 2009, for treatment of his cellulitis.  Tr. 522-33.

### III.  DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. §§ 404.1520; 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  Each step is potentially dispositive.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i).  At step two,

the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. If the claimant does not have such a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909; 416.920(a)(4)(ii).

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the Commissioner's regulations. If it does, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p.

At step four, the ALJ uses this information to determine if the claimant can perform his past relevant work. If the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. If the claimant cannot perform such work, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(a)(4)(v); 416.920(a)(4)(v); 416.920(f); *Yuckert*, 482 U.S. at 142; *Tackett*, 180 F.3d at 1099.

The initial burden of establishing disability rests upon the claimant. *Yuckert*, 482 U.S. 137, 146 n5; *Tackett*, 180 F.3d at 1098. If the sequential disability analysis reaches the fifth step, the

Opinion and Order, Page 4

burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d. at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 416.920(g); *Tackett*, 180 F.3d at 1099.

## IV. STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray*, 554 F.3d at 1222 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court, however, may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). This court, however, may not affirm the ALJ's findings based upon reasoning the ALJ did not express. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 US 194, 196 (1947)); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

Opinion and Order, Page 5

## V.  DISCUSSION

Mr. Becker challenges the ALJ's findings regarding: (1) his credibility; (2) the lay testimony; (3) his RFC assessment; and (4) his ability to perform his past relevant work at step four in the sequential proceedings.  Mr. Becker asserts that the ALJ should have found him disabled.

### A.      Credibility

Mr. Becker challenges the ALJ's credibility determination at length.  Pl.'s Opening Br. [12].

#### 1.        Credibility Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §§ 404.1529(a); 416.929(a).  After a claimant shows an underlying impairment that may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible.  *Lingenfelter,* 504 F.3d at 1036 (*citing Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony."  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (*citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).  The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen*, 80 F.3d at 1284.

The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id.*  The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony

"is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2.    Analysis: Credibility

The ALJ's credibility analysis cited Mr. Becker's activities of daily living, failure to follow recommended treatment, and the medical record. Tr. 20-21. Mr. Becker challenges each of these. Pl.'s Opening Br. [12] 7-13.

### a.    Activities of Daily Living

The ALJ cited Mr. Becker's report that he could walk three miles, play with his son, shoot paintballs, work on a computer, sit thirty minutes and stand nine hours, cook, wash dishes, perform household chores, and regularly socialize, and found these activities inconsistent with "an individual suffering from debilitating symptoms of diabetes." Tr. 21.

Mr. Becker first asserts that the ALJ "misread" the record pertaining to these activities. Pl.'s Opening Br. [12] 12-13.

The record before this court shows that Mr. Becker reported that he spends his days caring for his infant son and a dog, and keeping the house clean. Tr. 144-45. Mr. Becker stated that receives help in these tasks from his wife when she is home from work and he is experiencing dizzy spells or pain from his gout and cellulitis. Tr. 145. He wrote that he "sometimes" must "wait until he can walk" before dressing or bathing, and "sometimes must "crawl to the bathroom." Tr. 145. When he is not experiencing pain or dizzy spells, Mr. Becker prepares simple meals and household chores including vacuuming, sweeping, mopping, dishes, and laundry. Tr. 146. He does these activities throughout the day (*Id.*) and his daily hobbies include playing and working on computers. Tr. 148.

Mr. Becker stated that he is "more depressed all the time," and endorsed limitations in lifting,

squatting, bending, standing, walking, kneeling, and stair climbing, as well as in seeing and using his hands. Tr. 149. Mr. Becker wrote that he can walk two miles, depending upon his blood sugar levels, and must rest five minutes before resuming walking. Tr. 149. His ability to concentrate and follow instructions is "usually good," depending upon his blood sugar. *Id.* Finally, Mr. Becker wrote that when blood sugar is "off" he becomes dizzy, his vision blurs, and he cannot walk. Tr. 151.

At his April 22, 2010, hearing before the ALJ, Mr. Becker testified that he currently attends Community College as a full-time student learning web design (Tr. 33-34), and that he cares for a five-year old and one-year old while his wife works. Tr. 42. He testified that he becomes dizzy from high blood sugar once per day, but still cares for his children. Tr. 48-49. Mr. Becker testified he had cellulitis "where it'll last for weeks at a time," but did not indicate how often this occurred. Tr. 49. He reported that he experienced gout episodes "about once every two or three months," and now takes preventative medication for this condition. Tr. 49-50.

This record supports the ALJ's finding that Mr. Becker could perform activities such as walking several miles, playing with his son, and working and playing on a computer.

Mr. Becker's first asserts, contrary to the ALJ's findings, that he can no longer play paintball. Pl.'s Opening Br. 13. Mr. Becker points to his own reports to an examining psychologist that his favorite activities include playing paintball, but that he also did this "prior to his physical difficulties." Tr. 458. This single apparent contradiction does not establish that the ALJ's remaining findings regarding Mr. Becker's childcare, household, and other activities discussed above are insufficient.

Mr. Becker's second argument, pertaining to his activities of daily living, asserts that he

"never claimed a complete inability to perform most of the activities cited by the ALJ," inferring that the ALJ's reliance upon these activities was misplaced. Pl.'s Opening Br. 13 [12]. Mr. Becker provides no legal authority for this submission. The ALJ may specifically consider whether a claimant's activities of daily living are inconsistent with an allegation of total disability. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004). Here, the ALJ found that Mr. Becker's activities were consistent with an RFC directing a finding of non-disability and thus implicitly found Mr. Becker's activities inconsistent with his allegation of disability. Tr. 21. The ALJ's citation to Mr. Becker's activities is based upon the record, as discussed above. The reviewing court must affirm the ALJ's interpretation of a claimant's daily activities when it is reasonably based upon the record, although another plausible interpretation more favorable to the claimant may arise. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001). Mr. Becker's submission that he "never claimed complete inability" to perform these activities is insufficient to disturb this finding.

### b.    Non-Compliance with Treatment

The ALJ found that Mr. Becker's "failure to seek out regular treatment, including low-cost or no-cost diabetes medication, suggests that his symptoms are not as severe as alleged." Tr. 21. Mr. Becker asserts that this finding is not based upon the record, pointing to his clinic and emergency room visits. Pl.'s Opening Br. [12] 11.

The record shows that Mr. Becker regularly sought Emergency Room and clinic treatment between April 2005, when the record opens, and November 2006. Tr. 218-352; 374-413. The record does not indicate the cost of these clinic visits. Mr. Becker was then hospitalized for three days in January 2007, and received treatment from Dr. Juuma on four occasions between April 17, 2007, and August 30, 2007. Tr. 424-32. The record is silent between August 2007 and April 2008.

Mr. Becker received care from primary care physician Dr. North on seven occasions between April 2008 and December 30, 2008. Tr. 500-12. The record is again silent until September 9, 2009, when Mr. Becker was hospitalized for cellulitis (Tr. 522), and the record closes on September 18, 2009. Tr. 547.

The ALJ and Mr. Becker discussed Mr. Becker's failure to seek treatment at length during his April 22, 2010, hearing. Mr. Becker reported that he could not afford treatment, and that he had not attempted to obtain low-cost care. Tr. 53-54. The ALJ in turn urged Mr. Becker to be "a little more proactive" in obtaining care, and explained that social service agencies and Emergency Room staff could direct him towards resources. Tr. 54.

This record supports the ALJ's finding that Mr. Becker did not seek care for several months within period between his April 1, 2005, alleged onset date and September 2009, when the record closes. This court cannot now determine when Mr. Becker had access to low cost clinics, or which of the clinics in fact offered reduced or free services. While the ALJ may not chastise a claimant for failing to seek treatment he cannot afford, *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995), the ALJ's present findings cite only to Mr. Becker's failure to seek treatment, including low-cost treatment, and pointedly acknowledge Mr. Becker's report that he could not afford treatment. Tr. 21. This court must affirm an ALJ's findings based upon substantial evidence. *Batson*, 359 F.3d at 1193. The record supports the ALJ's finding that Mr. Becker at times failed to seek medical treatment for his allegedly disabling impairments, and the ALJ's finding on the matter is affirmed.

### c.    Medical Record and Credibility

Mr. Becker asserts, without specificity, that the ALJ's credibility evaluation improperly referred to the medical record. Pl.'s Opening Br. [12] 8. After a claimant establishes an impairment,

Opinion and Order, Page 10

an ALJ may not require that medical evidence corroborates the degree of the claimant's alleged symptoms. *Bunnell*, 947 F.3d at 346 (en banc). The ALJ, however, may cite the medical record in conjunction with other factors. *Robbins*, 466 F.3d at 880; *see also Smolen*, 80 F.3d at 1284. The ALJ presently based his credibility analysis upon Mr. Becker's daily activities and failure to follow treatment, as well as his medical record. Citation to these factors, analyzed in concert, is appropriate, and the ALJ's reliance upon the medical record in assessing Mr. Becker's credibility will not be disturbed.

Mr. Becker also argues that the ALJ erroneously cited the opinion of examining physician Timothy Fernstrom, D.O., in his credibility analysis. The ALJ cited Dr. Fernstrom's statement that Mr. Becker's diabetes could potentially interfere with workplace functioning, but that compliance with diabetes medication would "provide better control." Tr. 21. Notably, the ALJ did not give Dr. Fernstrom's opinion controlling weight. *Id.* Mr. Becker challenges the ALJ's citation to Dr. Fernstrom's opinion for three reasons: (1) Dr. Fernstrom did not perform a relevant examination; (2) Dr. Fernstrom's opinion is "irrelevant," and (3) the ALJ misconstrued Dr. Fernstrom's conclusions about Mr. Becker's medication. Pl.'s Opening Br. [12] 9-10. The Commissioner cites Dr. Fernstrom's opinion, but does not address these arguments. Def.'s Br. [18] 6.

Mr. Becker asserts, without legal authority, that the ALJ's reliance upon Dr. Fernstrom's opinion is misplaced because Dr. Fernstrom conducted a "basically orthopedic" examination. Pl.'s Opening Br. [12] 9. The Commissioner does not address Mr. Becker's specific arguments pertaining to Dr. Fernstrom's examination and Mr. Becker's credibility.

Dr. Fernstrom examined Mr. Becker on September 15, 2007, and discussed Mr. Becker's history of diabetes, cellulitis, gout, obesity, and other metabolic conditions. Tr. 463. Dr. Fernstrom

diagnosed poorly controlled diabetes, but noted that this finding was based upon Mr. Becker's report. Tr. 466. He also diagnosed morbid obesity, hypertension, hyperlipidemia, and depression, which he characterized as "treated." *Id.* In conclusion, Dr. Fernstrom found no objective evidence that would limit Mr. Becker's ability to stand and walk in an eight-hour workday, but noted that Mr. Becker's diabetes "if poorly controlled could potentially provide him difficulty in the workplace environment, as stated with his difficulty with driving. However, his new medication would be expected to provide better control." *Id.*

The record shows that Dr. Fernstrom is a licensed physician (Tr. 466), but does not indicate Dr. Fernstrom's medical specialty, if any. Dr. Fernstrom's discussion largely centered upon Mr. Becker's diabetes and other metabolic disorders. Tr. 461-63, 466. His examination included an assessment of Mr. Becker's vital signs and systems, as well as a cardiovascular and abdominal examination, attention to Mr. Becker's pulse, skin, extremities, coordination, gait, and joints, gross and fine motor skills, and a sensory and reflex exam. Tr. 461-66. This examination, in totality, is more than a "basically orthopedic" exercise, as asserted by Mr. Becker. Mr. Becker fails to establish error on this point.

Mr. Becker also asserts, again without legal authority, that the ALJ's reliance upon Dr. Fernstrom's findings regarding his ability to stand or walk was "irrelevant" because he was not experiencing goat, cellulitis, or dizziness at the time of the exam. Pl.'s Opening Br. 9 [12]. The record shows that Mr. Becker reported a recent gout episode to Dr. Juuma on July 30, 2007, which he said resolved with medication. Tr. 427. The record shows no further treatment for this disorder. Medical sources documented cellulitis in June 2006 (Tr. 352), November 2006 (Tr. 409), January 2007 and December 2009. Tr. 360-67; 522-33. These sources documented dizziness on specified

Opinion and Order, Page 12

occasions throughout 2005 (Tr. 215, 218-19, 223, 228, 231-32), and in March and July 2006.  Tr.

337, 387.  This limited record does not establish that Mr. Becker experienced these symptoms at all

other times during the period under review.

Dr. Fernstrom's examination reflects Mr. Becker's clinical presentation at the time of

examination.  An examining physician's opinion may constitute substantial evidence.  *See Lester*,

81 F.3d at 831 (discussing weight accorded to treating, examining, and reviewing physician

opinions). No authority allows this court to deem an examining physician's opinion "irrelevant"

when it is properly supported by clinical notes and findings.  Mr. Becker's argument, therefore, fails.

Finally, Mr. Becker asserts that the ALJ misread Dr. Fernstorm's statement regarding the

effect of Mr. Becker's diabetic medications upon his workplace functioning.  Pl.'s Opening Br. 9.

Dr. Fernstorm stated that Mr. Becker's diabetes was poorly controlled, and that "his new medication

would be expected to provide better control." Tr. 466.  The ALJ stated that Dr. Fernstrom opined

that "compliance with medication would provide better control."  Tr. 21.  The difference between

these statements is marginal; the ALJ's statement captures Dr. Fernstrom's opinion that Mr.

Becker's medications would aid in treating his diabetes; compliance with such medication is implicit

in Dr. Fernstrom's comment.  This court must affirm an ALJ's inferences "reasonably drawn" from

the record, *Batson*, 359 F.3d at 1193, and Mr. Becker therefore fails to establish error on this point.

In summary, the ALJ's credibility findings are based upon the record and the proper legal

standards, and are, therefore, affirmed.

## B.    Lay Witness Testimony

Mr. Becker argues that the ALJ improperly evaluated testimony submitted by Mr. Becker's

wife, Heidi Becker.  Pl.'s Opening Br. 14.

### 1.    Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. §§ 404.1513(d); 404.1545(a)(3); 416.913(d), 416.945(a)(3); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2008). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting his testimony.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

### 2.    Analysis

Mrs. Becker submitted a third-party report to the record on July 13, 2007.  Tr. 155-62.  She stated that Mr. Becker spends his day cleaning the house, caring for their son, and taking care of the dog.  Tr. 155-56.  Mrs. Becker stated that Mr. Becker can no longer drive and does not sleep well, and has difficulty dressing during a goat or cellulitis flare.  Tr. 156.  Mrs. Becker reminds Mr. Becker to take his medication, and Mr. Becker prepares simple meals, and performs household chores such as dishes and laundry.  Tr. 157. Mrs. Becker indicated that Mr. Becker shops for groceries every two weeks, and is able to pay bills and handle money.  Tr. 158. His hobbies and interests are daily computer use, and this activity has not changed since Mr. Becker's illness began. Tr. 159.  Finally, Mrs. Becker indicated limitations in Mr. Becker's ability to lift, squat, bend, stand, reach, walk, kneel, and climb stairs, as well as in seeing, completing tasks, and concentration.  Tr. 160.  She explained that Mr. Becker's blood sugar levels, goat, and cellulitis effect his ability stand and balance.  *Id.*  He can walk a "couple" of miles before resting five or ten minutes.  *Id.*

Opinion and Order, Page 14

The ALJ noted that Mrs. Becker described symptoms similar to those described by Mr. Becker.  Tr. 21.  The ALJ gave "partial weight" to Mrs. Becker's testimony, "to the extent it is consistent with the residual functional capacity," and concluded that Mrs. Becker's testimony was not "fully consistent with the medical and other evidence of record."  *Id.*  Mr. Becker asserts that the ALJ's findings regarding Mrs. Becker's testimony is neither  "specific" nor "legitimate" and therefore not germane to Mrs. Becker.  Pl.'s Opening Br. [12] 15.

The ALJ's finding that Mrs. Becker's testimony is similar to that of Mr. Becker is supported by the record.  Both stated that Mr. Becker spends his days caring for their son and performing household chores, using and playing on a computer, and that he can walk over a mile before requiring rest.  Tr. 144-45, 148-49, 155-56, 159-60.  The ALJ may reject lay testimony that mirrors testimony of a claimant properly found not credible.  *Valentine v. Comm'r*, 574 F.3 685, 694 (9th Cir. 2009).  The ALJ's reasoning is based on the record, comports with this legal standard, and is therefore affirmed.

The ALJ also found Mrs. Becker's testimony "not fully consistent" with the medical record.  Tr. 21.  The ALJ may reject lay testimony that directly conflicts, or is inconsistent with, the medical evidence.  *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).  The ALJ may not, however, reject lay testimony merely because it is unsupported by the medical evidence.  *Bruce*, 557 F.3d at 1116.  Although the ALJ's conclusion adequately reflects this standard, the ALJ offered no explanation for this conclusion.

The Commissioner now asserts that the ALJ is not required to provide reasoning for his conclusions "under Defendant's rules, which are entitled to deference."  Def.'s Br. 9 [18].  The Commissioner cites Social Security Ruling ("SSR") 06-03p, which addresses testimony submitted

Opinion and Order, Page 15

by non-acceptable medical sources and lay persons. The Ninth Circuit acknowledges that the Commissioner's interpretation of his regulations is entitled to deference. *Bray*, 554 F.3d at 1125 (*citing Auer v. Robbins*, 519 U.S. 452, 462-63 (1997)). The Ninth Circuit further instructs that while SSRs do not carry the "force of law," they are binding upon ALJs. *Bray*, 554 F.3d at 1124 (citing *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989)).

Regarding weight given to lay testimony, SSR 06-3p instructs, in full:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator *generally should explain* the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinion may have an effect on the outcome of the case. SSR 06-3p (available at 2006 WL 2329939 at *6) (emphasis added).

Further, the Ninth Circuit holds that the ALJ has a clear duty to explain his findings, *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990); *Lewis*, 236 F.3d at 512, and repeatedly instructs that an ALJ must give reasons that are germane to the witness for rejecting lay testimony. *Bruce*, 557 F.3d at 1115; *Dodrill*, 12 F.3d 915, 919; *Nguyen*, 100 F.3d at 1467. SSR 06-3p, as quoted above, clearly does not relieve the ALJ of this duty.

The ALJ's rejection of Mrs. Becker's testimony, to the extent it was predicated upon Mr. Becker's testimony is sufficiently germane, for the reasons explained above. The ALJ's conclusory statement that Mrs. Becker's testimony is simply "not consistent" with the medical record is not. The reviewing court, however, may affirm an ALJ's overall credibility findings when supported by the record and the appropriate legal standards, even when one of the reasons offered by the ALJ is deficient. *Rollins*, 261 F.3d at 857. The ALJ properly noted that Mrs. Becker's testimony repeated

Opinion and Order, Page 16

Mr. Becker's testimony, which the ALJ sufficiently rejected. For this reason, the ALJ's conclusions regarding the credibility of Mrs. Becker's testimony are affirmed.

## C.  Residual Functional Capacity Analysis

Mr. Becker argues that the ALJ's RFC analysis improperly omitted consideration of his "combined impairments" and his ability to perform "regular and continuing work." Pl.'s Opening Br. [12] 3, 15.

### 1.  Residual Functional Capacity Standards

After a claimant establishes a medically-determinable impairment that does not meet a "Listed" disorder at step three in the sequential proceedings, the ALJ must assess the claimant's RFC. 20 C.F.R. §§ 404.1520(e); 416.920(e). The RFC represents all of a claimant's work-related limitations, including non-severe limitations. 20 C.F.R. §§ 404.1545(a)(1-2); 416.945(a)(1-2). In making this assessment, the ALJ considers "all of the relevant medical and other evidence," as well as a claimant's testimony and lay testimony describing the claimant's limitations. 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3).

### 2.  Analysis

Mr. Becker argues that the ALJ's RFC analysis failed to include discussion of his cellulitis, gout, and lower extremity edema, citing the ALJ's duty to consider the "combined effects" of the claimant's severe and non-severe impairments. Pl.'s Opening Br. 4 [12].

The ALJ found that Mr. Becker's cellulitis did not meet the twelve-month durational requirement necessary to establish disability under 20 C.F.R. §§ 404.1509 and 416.909. Tr. 18. Mr. Becker does not challenge this finding, it is supported by the record, and therefore affirmed.

Mr. Becker testified to further limitations stemming from his cellulitis, gout, and edema, but

Opinion and Order, Page 17

the ALJ properly rejected this testimony for the reasons articulated above. Mr. Becker presently

does not challenge the ALJ's evaluation of the medical evidence, and fails to establish error in the

ALJ's analysis of testimony submitted by Mr. Becker and his wife. Mr. Becker therefore fails to

establish that the ALJ erroneously omitted additional limitations related to these conditions from his

RFC.

Mr. Becker also asserts that the ALJ failed to properly consider whether he could perform

work on a "regular and continuing basis." Pl.'s Opening Br. [12] 15. Mr. Becker offers no analysis

and points to no specific evidence establishing that he cannot perform such work. The

Commissioner's regulations addressing "regular and continuing work" state, in full:

> When we assess your physical abilities, we first assess the nature and
> extent of your physical limitations and then determine your residual
> functional capacity for work on a regular and continuing basis. A
> limited ability to perform certain physical demands of work activity,
> such as sitting, standing, walking . . . or other physical functions . .
> . May reduce your ability to do past work and other work. 20 C.F.R.
> § 404.1545(b).

The Ninth Circuit instructs that "occasional symptom-free periods - - and even the sporadic ability

to work - - are not inconsistent with disability." *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir.

1998) (quoting *Lester*, 81 F.3d at 833). These authorities, however, do not instruct that the ALJ

must in fact state that the claimant can or cannot perform regular and continuing work. Such a

finding is implicit in a finding of disability or non-disability. Mr. Becker fails to establish error in

the ALJ's findings regarding the medical and other evidence discussed above, and his argument

regarding his alleged inability to perform "regular and continuing work" does not point to any

additional evidence showing that he cannot perform such work. His submission therefore fails.

**E.**     **The ALJ's Step Four Findings**

Finally, Mr. Becker argues that the ALJ erroneously found that he could perform his past relevant work at step four in the sequential proceedings. Specifically, Mr. Becker asserts that the ALJ's finding regarding Mr. Becker's past relevant work is not based on the record. Pl.'s Opening Br. [12] 16.

### 1.    Step Four Standards

At step four, the ALJ determines whether a claimant can perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(iv); 416.920(a)(iv). If he can perform such work, he is not disabled. *Id.*

In determining the requirements of a particular position, the ALJ may refer to a claimant's past work as he actually performed it, 20 C.F.R. §§ 404.1565(b); 416.965(b), or the ALJ may take administrative notice of generic job descriptions contained in the *Dictionary of Occupational Titles* ("*DOT*"). SSR 82-61, "Past Relevant Work – the Particular Job or the Occupation as Generally Performed," (available at 1982 WL 31387 at *1-2). The ALJ may choose between these alternative tests. *Id.* The Commissioner's Administrative Ruling specifically acknowledges that "some individual jobs may require more or less exertion than the [*DOT*] description." *Id.* at *2.

The claimant is the primary source of information about his past relevant work. SSR 82-62, "A Disability Claimant's Capacity to Do Past Relevant Work, in General," (available at 1982 WL 31386 at *3). If the ALJ relies upon the *DOT* at step four, the ALJ must explain any discrepancies between the *DOT* data and the claimant's established limitations. *Pinto v. Massinari*, 249 F.3d 840, 847 (9th Cir. 2001) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

### 2.    Analysis: Step Four Findings

The ALJ found that Mr. Becker's RFC allows him to perform his past relevant work as a cashier and food preparer, and specifically limited this finding to these positions as "actually

performed" by Mr. Becker. Tr. 22. The record shows that Mr. Becker reported that these jobs required him to stand and walk eight hours per day (Tr. 168-73), and the ALJ found that Mr. Becker could not walk or stand more than six hours in an eight-hour day. Tr. 19. The ALJ's conclusion that Mr. Becker's RFC allowed him to perform his past work as a cashier and fast food worker is thus inconsistent with Mr. Becker's description of that work.

### a.    Reliance Upon the *Dictionary of Occupational Titles*

The Commissioner now asserts that this court should rely upon the *DOT* in affirming the ALJ's step four findings. Def.'s Br. [18] 10. The ALJ may consider job descriptions reported in the *DOT* as an alternative test for determining the nature of the claimant's past work. SSR 82-61 at *1. The difficulty here is that the ALJ did not state, or even infer, reliance upon the *DOT* (Tr. 22), and the reviewing court may not affirm the ALJ's decision based upon reasoning the ALJ did not express. *Bray*, 554 F.3d at 1225-26. The harmless error doctrine, however, applies in review of the Commissioner's decision. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63. The proper inquiry, thus, is whether the ALJ's decision remains legally valid, despite the error. *Id.*

The *DOT* indicates that both the "cashier" and "fast food worker" positions identified by the ALJ are classified as "light" work. *DOT*, "Cashier" (available at 1991 WL 671840) and "Fast Food Worker" (available at 1991 WL 672682). Light work entails "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . a job is in this category if it requires a good deal of walking or standing . . . ." 20 C.F.R. §§ 404.1567(b); 416.967(b). The ALJ found that Mr. Becker could perform light work, with an additional reduction to no more than six hours of sitting, walking, or standing at a time. Tr. 19. The Commissioner submits that the ALJ found only that Mr. Becker could perform light work, but fails to acknowledge

this additional restriction.  Def.'s Br. [18] 10.

This court cannot now determine whether Mr. Becker's past relevant work, as generally performed and described by the *DOT*, would allow Mr. Becker to sit, stand, and walk only six hours per day.  This court cannot determine that the ALJ's reliance upon the *DOT* would lead to the same conclusion that Mr. Becker is not disabled at step four.  In such circumstances, the harmless error doctrine is inapplicable.  *See Carmickle*, 533 F.3d at 1162 (finding error harmless where inconsequential to ultimate finding of nondisability).  The ALJ's findings, therefore, cannot be sustained.

### b.    Workplace Hazards

Mr. Becker additionally argues that the ALJ's findings that he could perform the fast food worker position is contrary to the ALJ's finding that he should avoid workplace hazards.  Pl.'s Opening Br. [12] 16.  Mr. Becker points to his report that he cooked hamburgers and ran a cash register in his past positions.  *Id.* (citing Tr. 168, 172).  This report does not establish a workplace hazard precluded by Mr. Becker's RFC.  Mr. Becker also refers to his past work as a meat grinder (Tr. 168), but this citation is irrelevant as the ALJ made no step four finding that he could perform work as a meat grinder.

### c.    Job Titles

Finally, Mr. Becker argues that the ALJ improperly substituted "Fast Food Worker" for "Plaintiff's actual past work in "food preparation jobs."  Pl.'s Reply Br. [22] 11.  The record shows that Mr. Becker in fact reported past work as a "Fast Food Worker," and that he additionally reported that he performed food preparation jobs in "Fast Food" businesses.  Tr. 163.  Mr. Becker, therefore, fails to establish error in the ALJ's citation to "Fast Food Worker."

Opinion and Order, Page 21

### 3.    Step Four Conclusion

The ALJ's finding that Mr. Becker could perform his past relevant work is not based on the record.  The ALJ failed to make proper alternative findings by citing the *DOT*.  The ALJ's step four findings must, therefore, be reversed.

## VI.  CONCLUSION

In conclusion, Mr. Becker fails to show that the ALJ erroneously evaluated his testimony, the lay witness testimony, and his residual functional capacity.  These findings are AFFIRMED. At step four, however, the ALJ erred in finding that Mr. Becker could perform his past relevant work as he performed it.  For this reason, the court REVERSES the Commissioner's final decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion and order to properly consider Mr. Becker's past relevant work at step four in the sequential proceedings.

IT IS SO ORDERED.

Dated this 5th day of March, 2012.

        /s/ Michael H. Simon
                Michael H. Simon
                United States District Judge